## J. Ochoa y Hermano *v.* Heirs or Successors in Interest of Celestino Lanza.

### Appeal from the District Court of Humacao.

No. 585.—Decided April 3, 1911.

Allegations—Demurrer—Cause of Action.—The complaint filed in this case does not state any cause of action against the defendants inasmuch as of the four allegations contained therein the first two refer to the capacity of the parties, the last to the failure to satisfy an obligation, and the third, which is the essential one, as it would, in a proper case, give rise to the action and furnish ground for the demand, only avers that the plaintiff association is the creditor of the party defendant for a certain sum by virtue of obligations contracted, and this averment does not involve a fact, but a conclusion of law.

Id.—Character of Creditor.—The condition of creditor must result from facts creating an obligation the considerations whereof may be different, and these facts must be alleged and specified so that upon their admission or substantiation the aforesaid condition shall have a legal existence.

Allegations of Law.—The allegation made by the party plaintiff that he is the creditor of the party defendant is the same as the allegation that the party defendant is the debtor of the plaintiff; and with respect to the latter it has been established by jurisprudence that it is an allegation of law and as such has no effect, nor can it substitute or supply facts.

Id.—The omission in a complaint to state facts that are necessary to constitute the cause of the action exercised cannot be supplied by the results of the evidence taken at the trial, inasmuch as the complaint, by itself alone, should set forth all such facts as are necessary to constitute said cause of action.

Obligations—Commercial Instruments—Promissory Notes Made Payable to Order—Prescription.—Promissory notes made payable to order are commercial instruments and, according to the Code of Commerce, extinguish three years after they have fallen due, whether protested or not.

Id.—Settlement With Creditors.—The settlement made by the debtor with his creditors in proceedings for suspension of payment whereby the latter have

allowed the former a specified period of time in which to pay all his debts does not affect the nature of the obligation which, if commercial, must not be understood as ceasing to be prescriptible, according to the Code of Commerce, in order to be governed by common law, for, if such obligation was not remitted or extinguished by another in consequence of the settlement, the obligation stands, with no alteration other than the accidental one of the time allowed for its satisfaction, but retaining its special character and legal efficacy.

The facts are stated in the opinion.

*Mr. Arturo Aponte, Jr.,* for appellants.

*Messrs. Bosch & Soto* for respondent.

Mr. Chief Justice Hernández delivered the opinion of the court.

The present action was begun upon complaint filed on December 18, 1907, by the firm of J. Ochoa y Hermano against the heirs or successors in interest of Celestino Lanza for the recovery of a debt, which complaint contains the following allegations:

1. That the complainant is a limited copartnership, with legal domicile in this city, and having capacity to sue and be sued.

2. That Celestino Lanza, who had died some five or six years before, was a merchant doing business in the city of Humacao.

3. That the complainant firm is a creditor of the Estate of Celestino Lanza on account of obligations contracted by the latter for the sum of $3,294.28, proceeding from $2,238.76, principal, with legal interest thereon from February 5, 1900, to December 15, 1907.

4. That neither Celestino Lanza nor his estate have at any time satisfied the aforesaid sum of $3,294.28.

The complaint closes with the prayer that judgment be rendered in due time condemning the Estate of Celestino Lanza to pay the aforesaid $3,294.28 and legal interest thereon from December 16, 1907, to the date of payment, and costs.

To the foregoing complaint Victor and Melquíades Lanza, heirs of Celestino Lanza, and Tomás Carreras, administrator

of their property, opposed the demurrers numbered 1 and 6 of section 105 of the Code of Civil Procedure, namely, that the court had no jurisdiction of the persons of the defendants, and that said complaint did not state facts sufficient to constitute a cause of action; and counsel for the defendant having failed to appear for the purpose of sustaining said demurrers on the day appointed therefor, the court, on motion of the complainant, in an order of April 12, 1908, adjudged that they had been desisted from and abandoned.

Thereupon the defendants answered the complaint alleging, by way of demurrer, that the same did not state facts sufficient to constitute a cause of action, the latter having prescribed according to article 950 of the Code of Commerce. By way of answer they admitted the first and second allegations of facts of aforesaid complaint and denied all the others; and by way of special plea they reproduced that of prescription which, as demurrer, had been alleged by them.

The court, by an order of January 3, 1910, overruled the plea of prescription because it did not appear from the complaint, and because other peremptory pleas had previously been overruled and no permission given for their reproduction; and as the complaint had been answered the court ordered the case to be entered upon the next calendar.

At the hearing on February 28, 1910, after the briefs of both parties had been read, counsel for the complainants offered in evidence a certificate issued by the secretary of the San Juan court with reference to proceedings in suspension of payment of Celestino Lanza, and counsel for the defendants having declared that he did not object to its admission if the purpose of said certificate was to show that on June 12, 1898, Celestino Lanza had suspended payment and that in the suspension proceedings there had figured a promissory note of the aforesaid Lanza in favor of the complainants, both parties, by mutual agreement and with the consent of the court, stipulated as follows:

"That Celestino Lanza suspended payment on May 13, 1898, and that in said suspension the complainants, J. Ochoa y Hermano, appeared as creditors of said Celestino Lanza with a promissory note, which reads as follows:

" 'For $4,704 currency. I promise to pay in this city, punctually on the 15th of March, 1898, to Messrs. J. Ochoa Hermano, or to their order, in current silver or gold coin, excluding all paper money, whether legal tender or not, the sum of $4,704, being the value of goods received and found correct, according to invoice of said date. I waive the right of domicile and all laws that may favor me, and bind myself to pay the interest of 1 per cent per month from the day of maturity to that of payment, besides the costs, expenses, and damages that may be caused by delay. San Juan, P. R., November 15, 1897.   C. Lanza.' "

For the maintenance of this stipulation the aforesaid suspension of payment was declared, which proceedings are transcribed in the record, and counsel for the complainants announced to the court that he had no more evidence to submit.

Counsel for the defendants prayed an order of nonsuit, or that judgment be entered in their favor, inasmuch as the material allegations of the complaint had not been proven; and, furthermore, pleaded prescription in their favor under article 950 of the Code of Commerce.

Counsel for the complainants objected to said request, and after asking the court's permission to amend the third allegation of the complaint in accordance with the evidence a decision was rendered, couched in the following terms:

"On February 28, 1910—a date previously set for the trial thereof—this case was called up, the parties appearing through their attorneys, Manuel Tous Soto and Arturo Aponte, Jr., for the complainants and defendants, respectively. The court, in view of the documentary evidence and the motion for a nonsuit filed by the defendants at the termination of the complainants' evidence, and the arguments of counsel for both parties, reserved its decision. The court now decides that the motion for a nonsuit filed by the defendants embraces two points: (*a*) Total failure of the evidence; (*b*) prescription of the right of action exercised. Regarding the

former there exists only a curable incongruance, and the court holds that inasmuch as the complainants have asked leave to make an amendment to their complaint so as to have it conform to the evidence, this being a discretional matter and one favoring the ends of justice, the granting whereof causes no prejudice to the defendants, who would not have to make a plea different from the one set up, the requested amendment is authorized to be made immediately—that is, within the term of 24 hours—the costs accruing thus far being, moreover, taxed against the complainants.   (See *Kamm* v. *B. of California,* 74 Cal., 191.)

"With respect to the second, although the novation of the principal obligation does not exist, as may be seen by the legal annotations inserted below in connection with the documentary evidence introduced, the Code of Commerce fixes no term for the prescription of this class of obligations, since the efficacy of the original promissory note has ceased, although the obligation subsists in full; and, therefore, application must be made of article 943 of the Code of Commerce which, leaving this class of actions to be governed by the common law, allows 15 years for the prosecution thereof."   (See judgments of the Supreme Court of Spain of Feb. 1, 1883, and June 28, 1904; *Manresa, Coment. al Código Civil,* vol. 8, p. 431.)

"As to the failure to pay, the court holds that the payment of an obligation is a matter of defense that should be pleaded by the defendant.

"This order is directed to be communicated to the parties, for the continuance of this cause, on March 7 at 10 a. m.

"Given in open court this day.   (Signed) Jorge V. Domínguez, Judge District Court.   Attest: Jesús L. Pereyó, Secretary."

To this decision the defendants took exception.

On the strength of the permission of the court the complaint was amended so as to read that the amount of the outstanding indebtedness was 4,704 *pesos,* special money, equal to $2,822.40, American gold, and interest thereon from February 5, 1900, to March 5, 1910, at the legal rate, amounting to $1,707.55, American gold, which items of principal and interest give a total of $4,529.95, American gold, to the payment whereof the defendants were to be adjudged, with legal interest from March 5, 1910, the date of the amendment made, until total payment thereof, and costs taxed against them.

The hearing of the case having been resumed on the appointed day (March 7), both parties stipulated *that the complainants had made no demand upon, nor instituted judicial proceedings against, the defendants prior to the date of the filing of the complaint.*

The defendants presented the same certificate of proceedings in suspension of payment as evidence in the part relating to the appeal taken in said proceedings by one of the creditors from the decision rendered by the Judge of First Instance of Humacao, and, furthermore, another certificate from the municipal corporation of Humacao to the effect that Celestino Lanza had been a merchant in said city until the first semester of 1900, when he discontinued business.

From the papers in the proceedings in suspension of payment introduced as evidence and inserted in full in the record, it appears:

(*a*) That at a meeting held before the Judge of First Instance of Humacao, on June 20, 1898, the creditors of Celestino Lanza, among whom appeared Severo Ochoa, as indorsee of J. Ochoa y Hermano, holders of the promissory note made in their favor on November 15 of the preceding year for the sum of 4,704 *pesos,* agreed to allow Lanza one year of respite and four years within which to pay all his debts in full in four instalments and without interest.

(*b*) That this agreement or covenant was approved by an order of the Judge of First Instance of Humacao on July 6, 1898, although reducing to three years the time allowed the debtor to pay his creditors, which payment was to be made in three instalments on June 20, 1899, 1900, and 1901, respectively.

(*c*) That the creditor firm, Bolívar, Arruza & Co., on November 8, 1898, prayed the nullity of the order declaring the merchant, Celestino Lanza, in suspension of payment, and, at all events, the nullity of the meeting for the agreement of his creditors, besides the nullity of the order approv-

ing the covenant, all which prayers were denied by an order of the Humacao court dated December 13 of the same year.

(*d*) That the aforesaid firm took an appeal from the order of December 13, 1898, which was allowed, the representatives of the appellant and of Celestino Lanza being summoned to appear before the Supreme Court on February 6, 1899, but it does not appear that such appeal was heard and decided.

The trial terminated by a judgment, which reads:

"On March 7, 1910, previously set for the trial of this case, which was called up, Attorneys M. Tous Soto and Arturo Aponte, Jr., appearing for the complainants and defendants, respectively, announced that they were ready, and the court, after *hearing* the *written* arguments of the parties and the evidence produced, reserved its decision.

"On this, the 22d day of April, 1910, the court decides that the law and the facts are in favor of the complainants, inasmuch as with respect to the pendency of the appeal from the order approving the suspension of payment the extinction of the action must be presumed as a question of law under articles 410 and 414 of the former Law of Civil Procedure, the original records of which were filed with the District Court of San Juan pursuant to section 12 of General Orders No. 118, of August 16, 1899.

"And the other pleas having been decided in the interlocutory order of this court dated March 7, 1910, and the complaint amended, the heirs of Celestino Lanza *et al.* are ordered to pay the complainants, J. Ochoa y Hermano, the sum of $4,529.95, which they owe the latter as heirs of their deceased uncle, Celestino Lanza, besides the costs accrued. April 22, 1910. (Signed) Jorge V. Domínguez, Judge, District Court. Attest: Jesús L. Pereyó, Secretary, District Court of Humacao."

From the above-transcribed judgment the defendants took an appeal to this Supreme Court, alleging, among other legal grounds in support thereof, that the court below had erred in not sustaining the demurrer to the complaint on the ground that the latter did not state facts sufficient to constitute a cause of action, and, in deciding upon the merits of the case, that the right of action of the complainant firm had not prescribed.

The complaint, whether considered in its original form or

with the amendment made thereto, confined only to the amount of the demand, does not show any cause of action against the defendants, for of the four allegations contained therein the first two refer to the capacity of the parties, the last to the default of the obligation, and the third, which is the material one, as in a proper case it would give rise to the action and furnish a basis for the demand, only avers that the complainant firm is the creditor of the party defendant for a specified sum by virtue of obligations contracted, and this averment does not involve a fact, but a conclusion of law. "*Creditor.*—A person to whom an obligation is due." (Bouvier's Law Dict., vol. 1, p. 475.) "*Creditor.*—One who has a right to recover money of another on any account whatever." (Am. and Eng. Encyc. of Law, vol. 8, p. 238.) "*Creditor.*—A person who is entitled to demand something." (*Escriche, Diccionario razonado de Legislación y Jurisprudencia.*)

As we see, the condition of creditor must result from facts giving rise to an obligation the considerations whereof may be different, and these facts must be alleged and specified so that, once admitted or substantiated, such condition may have a legal existence.

The allegation made by the party complainant that it is the creditor of the party defendant is the same as the allegation that the party defendant is the debtor of the party complainant, and with reference to such allegation a learned jurist says:

"An allegation that a person is or was 'indebted,' even though adding, 'for moneys received,' etc., or 'for services,' etc., describing the ground of indebtedness, *is a mere conclusion,* and insufficient on demurrer, unless details of time, place, request, etc., are given sufficient to amount to a substantial allegation of facts showing liability." (Abbott's Trial Brief, vol. 1, p. 534, 2d ed., and notes contained therein.)

"The allegation that a sum is due is a mere conclusion of law." (Bliss on Code Pleadings, par. 212, p. 234, 3d. ed.)

And conclusions of law serve no purpose in pleadings, nor can they substitute or supply facts. The complaint, according to section 103 of the Code of Civil Procedure, must contain, among other requisites, a statement of the facts constituting the cause of action, in ordinary and concise language, and this provision cannot be considered as complied with by means of conclusions of law.

"The system of allegations under the code is emphatically a system of facts; only facts must be alleged—that is, in contradistinction to law, arguments, hypotheses, or evidence of the facts. The complainant is bound frankly and truthfully to state the facts constituting the cause of action." (Encyclopedia of Pleading and Practice, vol. 12, p. 1022.)

The defect contained in the complaint cannot be corrected by the stipulation of the parties at the trial as to Celestino Lanza's having suspended payment in 1898, and J. Ochoa y Hermano's appearing among his creditors for the sum of $4,704, according to promissory note payable to order inserted in said stipulation, for it devolves upon us to decide now whether the complaint, as it was filed and gave rise to the trial, stated the cause of action, which it did not, as we have hereinbefore set forth, nor did the aforesaid stipulation alter the complaint in its material allegation.

Such stipulation can have no wider scope than that derived from the terms in which it was couched and the purpose that the parties had in view in making it, namely, to show that Lanza had suspended payment, and that in the proceedings in suspension of payment the complainant firm appears as creditor upon a promissory note payable to order signed by Lanza.

But if it is admitted that through the above-mentioned stipulation and the record of proceedings in suspension of payment brought to the trial as evidence, the debt sought to be recovered is the same as that arising from the promissory note payable to order inserted in the stipulation, we must conclude that the lower court erred in holding that the action

exercised by the complainant firm has not prescribed. Such action would then be derived from the promissory note which on November 15, 1897, was made by the defendant in favor of the complainant firm, or to its order, for the sum of 4,704 *pesos* of the money then in circulation proceeding from goods received and found correct, payable on March 15, 1898, with interest at 1 per cent per month from the day of maturity to that of payment. Said promissory note is a commercial instrument, and as such subject to the provisions of the Code of Commerce, as has been held by us in the case of *Agustín Hernández* v. *José de los Santos Muñiz,* decided March 15, 1906. According to article 950 of aforesaid code actions arising from drafts, promissory notes of commerce, checks, stubs, and other instruments of draft or exchange shall extinguish three years after they have fallen due, whether protested or not. The promissory note, according to the text thereof, fell due on March 15, 1898, and, according to the agreement approved by the Judge of First Instance of Humacao in the proceedings for the suspension of payments of Celestino Lanza, on June 20, 1901, for on that day fell due the last of the three equal instalments allowed for settlement of the debt. The complaint was filed on December 18, 1907; wherefore, whether the promissory note be considered in its original form or as having been extended, the term of three years fixed for prescription has been exceeded and this prescription was not interrupted, for the complainants admit that they have made no demand upon, nor instituted judicial proceedings against, the defendants prior to the date on which the complaint was entered.

We cannot admit that by reason of the agreement had at the meeting of the creditors of Lanza the cause of action arising from the promissory note has ceased to be prescriptible under article 950 of the Code of Commerce in order to be governed by the provisions of the common law, as determined by article 943 of the same code, in which case the term of prescription would be 15 years from the date on which

the agreement was entered into. The obligation contracted by Lanza on making the promissory note was not remitted or extinguished by another in consequence of the agreement, but stands, as to its substance, object, and principal conditions, with no alteration other than the accidental one of the time allowed for its satisfaction; wherefore, the promissory note subsists, although affected by said alteration, which does not deprive it of its special character and legal efficacy. So true is this that, according to the amendment made in the complaint upon the result of the evidence, the same debt, as shown by the promissory note and no other, is the one sought to be recovered.

In corroboration of the foregoing we may cite sections 1124, 1171, and 1172 of the Revised Civil Code, corresponding to articles 1156, 1203, and 1204 of the old Civil Code, and the judgment of the Supreme Court of Spain of June 28, 1904.

The judgment of the same court of December 11, 1906, invoked by the respondents, is not applicable to the present controversy, inasmuch as it has reference to a case where the original obligation was substantially modified by virtue of an agreement.

For the foregoing reasons, and as it is unnecessary to enter upon the consideration of other legal questions brought up for discussion, among which that of the absence of proof as to the obligation the fulfilment whereof is demanded, and of the error committed by the court in holding that the defendants were bound to allege payment of the debt, inasmuch as the complainants had alleged nonpayment in their complaint, we are of the opinion that the judgment appealed from should be reversed and the complaint dismissed without special imposition of costs.

*Reversed.*

Justices MacLeary, Wolf, and del Toro concurred.
Mr. Justice Aldrey took no part in the decision of this case.